94 So.2d 863

F. H. SMITH et al.

v.

O. B. SMITH et al.

4 Div. 843.

Supreme Court of Alabama.

April 25, 1957.

Sam A. Le Maistre, Eufaula, for appellants.

**120**

Crews Johnston, Clayton, for appellees.

LIVINGSTON, Chief Justice.

This appeal is from decrees sustaining the demurrer of Aluminum Company of America and the demurrer of O. B. Smith and Claude Smith to the bill of complaint as amended.

The bill alleges, in substance: That Joseph I. Smith, who died intestate on the 27th day of October, 1950, was the owner of the real estate in controversy, and that the complainants and respondents, with the exception of Aluminum Company of America, are the sole surviving heirs at law of said Joseph I. Smith; that Claude Smith, respondent, was appointed administrator of the estate of Joseph I. Smith by the Probate Court of Barbour County, Alabama; that O. B. Smith, respondent, either alone or in conspiracy with said administrator, effectuated a fraud on the other joint owners, in that he convinced them that the administrator was incompetent and promised to watch over the administration, and further that said realty should be sold at a public sale to pay the debts of the estate; that complainants and respondents agreed that said realty should be sold, but that the mineral rights therein would be reserved to said heirs; that complainants relied on the representations and promises of the respondents, and paid no attention to, and made no appearance at the proceedings instituted in the probate court by the administrator to sell said realty; that the administrator, instead of performing said agreement, offered for sale and sold said property without reserving the mineral rights; and that said O. B. Smith, respondent, purchased said property in his own name and procured a deed without reservation of the mineral rights. It is futher alleged that O. B. Smith, respondent, before and at the time of said sale, was familiar with the lands in question, having lived on and farmed the lands for many years; that at the request of the administrator, who was his brother, O. B. Smith had the timber on said land cruised by one familiar with the value of growing timber and found that the value of merchantable timber was in excess of $3,000, and falsely reported to the administrator, who relied on said report and made no independent investigation, that the value of merchantable timber was about $700; that the debts of the estate of Joseph I. Smith, deceased, amounted to only $783.39, and that the sale of timber alone would have brought more

than enough money to pay the debts of said estate. It is further alleged that O. B. Smith, after purchasing said land, entered into a contract with Aluminum Company of America, a corporation, giving said company the right to remove bauxite from under said lands in consideration for said company paying to him a certain sum of money as royalties for all bauxite removed from said lands. It is further averred that complainants did not discover the fraud or breach of trust until a time when all rights of review from said order of sale had expired.

The complainants pray that a temporary injunction be issued restraining Aluminum Company of America from paying any further royalties to O. B. Smith in consideration for said bauxite until the rights and interests of the parties have been determined; and that upon a final hearing, the conveyance to O. B. Smith be set aside and held for naught, or, in the alternative, that the administrator's deed be reformed so as to give effect to the agreement of the parties. There was also a prayer for general relief and an offer to refund the purchase price.

The Aluminum Company of America demurred "to the Bill of Complaint * * * as amended, and to each and every paragraph thereof, separately and severally." O. B. and Claude Smith demurred to "the bill of complaint as amended, generally, and in each of its several aspects." This court has repeatedly held that such demurrers are demurrers to the bill as a whole. Thompson v. Hanna, 262 Ala. 467, 80 So.2d 267; First Nat. Bank of Birmingham v. Bonner, 243 Ala. 597, 11 So.2d 348. And the ruling of the lower court in sustaining the demurrers must be reversed if any aspect is good. Tyler v. Copham, 245 Ala. 151, 16 So.2d 316.

The bill alleges that the complainants and respondents were the only heirs of Joseph I. Smith, deceased, and that the realty descended to them as joint owners.

Tenants in common are in a confidential relationship to each other by operation of law as to the joint property. Caldwell v. Caldwell, 173 Ala. 216, 55 So. 515; 14 Am.Jur. 78; Annotations, 6 A.L.R. 297; 54 A.L.R. 874; 85 A.L.R. 1535; 19 L.R.A.,N.S., 591. And a cotenant cannot buy an outstanding adversary claim to the common estate and assert it for his exclusive benefit to the injury or prejudice of his co-owners. Randolph v. Vails, 180 Ala. 82, 60 So. 159; Draper v. Sewell, 263 Ala. 250, 82 So.2d 303, and authorities cited therein. However, this rule does not prevent one heir from purchasing the entire estate at an administrator's sale for the purpose of subjecting the land to the payment of the debts of the decedent. In re Reynold's Estate, 239 Pa. 314, 86 A. 858; Clapper v. Powers, 222 Miss. 878, 77 So. 2d 808; Sewell v. Reed, 189 Ark. 50, 71 S.W.2d 191; 14 Am.Jur. 126. In Aubuchon v. Aubuchon, 133 Mo. 260, 265, 34 S.W. 569, 570, Justice MacFarlane stated:

"* * * It may be conceded that the heirs of an intestate, upon his death, take the land of which he died seised as tenants in common, and their reciprocal duties immediately arise. But the estate does not vest in them absolutely. It is subject to be divested whenever the land is taken into the custody of the courts, and subjected to the payment of the debts of the deceased. The law appropriates the title to the land, not as that of the heirs, but as it came directly from the ancestor. The probate court orders the sale of the land, and not the interest of the heirs. Rev.St.1889, § 148. The deed made in pursuance of the sale conveys to the purchaser 'all the right, title, and interest which the deceased had in such real estate at the time of his death.' Id. § 171. The relation of cotenancy for the purpose of the sale is severed by the order. The purchase is in no sense that of an equity of redemption, an incumbrance or an outstanding title. It is a purchase of the

entire title, as it came from the decedent, and as it existed in him before his death. The order of sale goes behind the cotenancy, and subordinates the rights of the heirs to the paramount right to appropriate the property for the payment of debts. The right of one heir to purchase for his exclusive benefit is analogous to that of a tenant in common to purchase at a sale of the property under an order of sale in partition. This right seems to be recognized in Stephens v. Ells, 65 Mo. [456] 460. At such public sales, either by administrators or under orders of court, for the purpose of effecting a partition, where the entire estate is sold and the cotenancy is destroyed, the parties are released from the relation of confidence which requires each to act for the common good, and are and ought to be free to act for themselves and their own interest. It has certainly been the understanding of the bar of the state that an heir can purchase at such sales. Such has also been the common practice. To hold otherwise would virtually deny an heir the right to bid. It would greatly decrease competition, and would often cause a sacrifice of estates. The sale is judicial, and is under the control of the probate court. The administrator represents the heirs as well as the estate and the creditors. Any unfairness or misconduct by either the heir or the administrator can be corrected by the court."

In Phillips v. Phillips, 224 Ala. 321, 140 So. 434, this court held that at a sale for division a tenant in common had the right to become the purchaser and acquire title to the entire tract. See also Caldwell v. Caldwell, supra.

The jurisdiction of the probate court to order a sale of a decedent's lands for the payment of debts is statutory, special, and limited. Robertson v. Bradford, 70 Ala. 385; Hall v. Chapman's Adm'rs, 35 Ala. 553. And the right of an administrator to sell lands to pay debts of his intestate is wholly statutory, and he alone can do so on the conditions and in the manner prescribed by the statutes. Austin v. Eyster, 242 Ala. 402, 6 So.2d 892; Ex parte Stephens, 233 Ala. 167, 170 So. 771; Kirkbride v. Kelly, 167 Ala. 570, 52 So. 660.

Sections 242–276, Title 61, Code of 1940, outline the procedure to be followed in order to perfect a sale of a decedent's realty for payment of debts or division. Section 253, Title 61, Code of 1940, provides:

"On the hearing of such application, if the court is satisfied that the personal property of the estate is insufficient to pay the debts, * * * *the court may direct the sale of all, or such portion of the real estate as may be necessary to pay the debts* * * *." (Emphasis supplied.)

In construing a similar statute, the Supreme Court of Michigan in Oberstein v. Oswalt, 47 Mich. 254, 10 N.W. 360, 361, stated:

"* * * These provisions do not authorize or contemplate the sale of an undivided interest in the estate, in case it is unnecessury [sic] to sell the whole. Whatever part or parcel of the estate is to be sold, it must be the entire interest which the deceased had therein, the interest of the estate as a whole, that must be sold. * * *

"These statutes do not contemplate a carving up of estates and sales of undivided interests, less than the whole title thereon, * * *."

See also Hewitt v. Durant, 78 Mich. 186, 44 N.W. 318; Daley's Appeal, 47 Mich. 443, 11 N.W. 262.

In Pelletreau v. Smith, 30 Barb., N.Y., 494, it was stated:

"* * * This, however, is not a proceeding where the various estates and interests which might be carved out of the entire fee can be recognized and adjusted upon equitable principles. The authority of the surrogate is derived solely from the statute concerning the powers and duties of executors and administrators, in relation to the sale and disposition of the real estate of their testator or intestate, and its directions must be rigorously observed. His authority is limited to making an order or decree to mortgage, lease or sell so much of the real estate of the testator or intestate as shall be necessary to pay his debts. It is the real estate of the deceased which is to be leased, mortgaged or sold, and not any particular estate (such as an estate for years, for life, or in remainder) therein which he may have devised to another, that is to be sold. The act is not susceptible of execution upon any theory short of a mortgage, lease or sale of the entire estate of the testator at the time of his death. * * *"

However, other jurisdictions have construed similar statutes as allowing the judge of probate to sell particular estates or interests, less than the whole, which the deceased had in the property at the time of his death. See City National Bank v. City of Bridgeport, 109 Conn. 529, 147 A. 181.

■ In construing a statute, every word and each section thereof must be given effect, if possible, and construed with other sections in pari materia. Ex parte Darnell, 262 Ala. 71, 76 So.2d 770; City of Montgomery v. Smith, 205 Ala. 557, 88 So. 671.

Section 268, Title 61, Code of 1940, provides:

"After such confirmation, and when the whole of the purchase money has been paid by the purchaser, or his heirs, or any other person holding under him, directly or derivatively, on the application of such purchaser, or his heirs, or such other person holding under him, or of the executor or administrator, the court must order a conveyance to be made to such purchaser, or to his heirs, or to such other person holding under him, as the case may be, by the executor or administrator, or such other person as the court may appoint, *conveying all the right, title, and interest which the decedent had, at the time of his death, in such lands;* and such order shall operate to vest the right, title, and interest of the decedent in such purchaser, or his heirs, or such other person holding under him." (Emphasis supplied.)

■ If Section 253, supra, were interpreted as meaning that the probate court could authorize the sale of any interest in the deceased's realty in order to pay the debts of the estate, such interpretation would in effect make Sec. 268 an otiosity. Therefore, it is evident that the legislature intended to empower the judge of probate to sell a part or parcel of the realty of a decedent's estate when the debts owed by the estate were not enough to require the sale of all the realty owned by the deceased at the time of his death, but the judge of probate could only authorize the sale of the entire interest which the decedent had in that part or parcel to be sold.

In 34 C.J.S. Executors and Administrators § 553, p. 502, it is stated:

"On a sale of land by an executor or administrator for the payment of the debts, all decedent's interest therein should be sold, subject only to encumbrances existing at the time of his death, and where decedent owned the entire estate, an undivided or partial interest therein usually cannot be sold. * * *"

Bolling v. Jones, 67 Ala. 508; Austin v. Willis, 90 Ala. 421, 8 So. 94; and John-

124

son v. Porterfield, 150 Ala. 532, 43 So. 228, cited by appellants, in no way conflict with this construction.

 In an administrator's sale of deceased's lands to pay the debts of his intestate, the court is the vendor. Kennedy v. Parks, 217 Ala. 323, 116 So. 161; Denman v. Payne, 152 Ala. 342, 44 So. 635. The probate court was without statutory authority to sell the lands reserving the mineral interest to the heirs.

We have determined that O. B. Smith had the right to purchase said land. The bill alleges the existence of debts of the estate, and for aught appearing there was not sufficient personalty to pay said debts. When there are debts of an estate and the personalty is insufficient to satisfy said debts, it is mandatory that the administrator sell the lands of the estate to pay said debts. Boyte v. Perkins, 211 Ala. 130, 99 So. 652. And, further, for aught that appears in the bill of complaint, the purchase price paid by O. B. Smith for the land in controversy was adequate, and the complainants received shares of the purchase price equal to the value of their entire interests in said lands, less the amount of the debts owed by the estate of the intestate. Hence, there was no averment in the bill which shows that the complainants were or will be injured by the alleged misconduct of respondent, O. B. Smith. In equity, as at law, with the exception of special cases in some jurisdictions, fraud will not be relieved against unless it is shown that injury resulted or will result to the complainants as a consequence of said fraud. Kelly v. McGrath, 70 Ala. 75, 45 Am.Rep. 75; Meeks v. Garner, 93 Ala. 17, 8 So. 378, 11 L.R.A. 196; Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73; Gray v. Gray, 246 Ala. 627, 22 So.2d 21; Smith, Fraud, § 287, p. 308; 23 Am.Jur. 985. And for like reasons, the fact that O. B. Smith falsely reported to the administrator the value of merchantable timber on said lands does not give the bill equity.

The trial court did not err in sustaining the demurrers to the bill of complaint and the cause is due to be, and is, affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.